James E. **MIDDLEBROOK** and Mae Middlebrook, Plaintiffs,

v.

**CITY OF BARTLETT, et al., Defendants.**

**No. 01–2706 M1/Bre.**

United States District Court, W.D. Tennessee, Western Division.

March 7, 2003.

Joedae L. Jenkins, Tyrone Jamal Paylor, Law Office of Joedae Jenkins, Memphis, TN, for Plaintiffs.

Edward J. McKenney, Jr., Hanover Walsh Jalenak & Blair, Memphis, TN, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCCALLA, District Judge.

Before the Court is Defendants' Motion for Summary Judgment, filed September 9, 2002. Plaintiff responded in opposition on November 8, 2002. Defendants filed a reply brief on November 15, 2002. For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion.

## I. Background

This case concerns Plaintiffs' attempts to obtain a building permit from the City of Bartlett ("Bartlett"). Plaintiff James Middlebrook purchased a 1.42 acre tract of land in Bartlett at the corner of Billy Maher Road and Fiske Road in 1993. Plaintiff's property is located in the extreme northwest corner of Bartlett. Plaintiff's property has never been connected to either Bartlett's water or sewer system.

### A. Plaintiffs' Initial Request for a Building Permit

Plaintiff desired to build a home on this piece of land. He hired someone to draw blueprints for the house and, beginning in late 1995, he attempted to obtain a building permit from Bartlett.

In order to obtain a building permit in Bartlett, a property owner must have either sewer service or a septic tank. In order for a property owner to obtain permission to install a septic tank, the property must be at least two acres with access to public water, or at least four acres if public water is not available.

Plaintiff's property was not connected to either Bartlett's sewer or water system in 1995. Therefore, Plaintiff would have been required to include plans for a septic tank in the plans for his house. Defendant William McClanahan, who was the Bartlett City Engineer in 1995, met with Plaintiff and initially informed him that he could not build a house on his property because he did not own two acres of land.[1] Mr. McClanahan believed that all landowners were required to own at least two acres of land before they would be allowed to install a septic tank. Given that Plaintiff owned only 1.42 acres of land, Mr. McCla-

---

1. Mr. McClanahan did not have the opportunity to look at the plat for Plaintiff's property during this meeting.

nahan informed him that he could not build on the land because he was not allowed to install a septic tank. Mr. McClanahan also apparently informed Plaintiff that it would cost $7,000 to run the water line to his property and $20,000-$40,000 to provide sewer service to his property. Mr. McClanahan then referred Plaintiff to Defendant Charles Goforth, who served as Bartlett's Director of Planning and Development in 1995. Mr. Goforth confirmed that Plaintiff could not build a house on the property given the acreage.

Plaintiff has stated that although he went to City Hall in 1995 to obtain a building permit, he never filled out an application for a building permit for the property or supplied Bartlett with all of the required documentation. However, he also states that he was never informed of all of the requirements for receiving a building permit (i.e. the requirements listed in paragraph 6 of the Affidavit of Ancil P. Austin).

In February of 1997, Mr. Goforth again met with Plaintiff and informed[2] him that the Shelby County Health Department had made an exception for his parcel of land in 1975[3] that allowed a septic tank to be used notwithstanding the two acre minimum requirement. Mr. Goforth informed Plaintiff that, in accordance with this exception, he could build a house on the property if he installed a septic tank. Plaintiff has stated that he was willing to install a septic tank at that time.

**B. Requests for Water and Sewer Service**

However, Plaintiff still needed a water connection in order to install a septic tank. On February 24, 1997, Mr. McClanahan requested that the Public Works Director schedule an extension of the water line to Plaintiff's property as soon as possible. Before Bartlett was able to run a water line to Plaintiff's property, Memphis Light, Gas & Water ("MLGW") ran a water line down Billy Maher Road to within forty feet of Plaintiff's property in 1997. This water line is apparently located across the street from Plaintiff's property.

Plaintiff would be required to pay MLGW a fee to connect to its water line. According to Mr. Goforth, the fee to connect to the MLGW line is less than the cost to connect to the line that Bartlett had planned to extend to Plaintiff's property.

Mr. Goforth states that he informed Plaintiff in late 1997 or early 1998 about the MLGW line. Plaintiff claims to have had monthly contact with Mr. Goforth between mid-1997 until October of 1998 in an attempt to obtain information regarding

---

**2.** Plaintiff and Mr. Goforth have disagreed as to which of them initially located the plat for Plaintiff's property and the exception allowing Plaintiff to install a septic tank with less than two acres of land.

**3.** Bartlett annexed Plaintiff's land from Shelby County in 1985 in anticipation of developing a subdivision in the annexed area, which later became known as the Daybreak Subdivision. The exception allowing a septic tank on Plaintiff's land apparently survived the annexation.

At the time Bartlett annexed the land, it adopted a Plan of Service, Resolution 13-79, which stated that existing homes would receive water and sewer service within five years of the date of annexation. There is some dispute as to whether the dilapidated shack that existed on Plaintiff's property at the time of annexation was inhabited. In any event, according to Mr. Fulmar, Bartlett was unable to provide sewer service to the five existing homes within five years in accordance with the Plan of Services. Mr. Fulmar has stated that these five homes and the six homes in the Willoughby Woods rural subdivision, all of which are owned by caucasians, still do not have sewer service and are scheduled to receive sewer service in 2005, at the same time as Plaintiffs, pursuant to the Sewer Extension Schedule.

sewer and water service. However, Plaintiff's affidavit states that he was never informed prior to April 29, 1999 that MLGW had run a water line near his property to which he could connect. This is contradicted by Plaintiff's deposition testimony, in which he states that he was told the price to connect to the MLGW water line would be $500–$750. He apparently discussed this with Mr. McClanahan some time prior to November 9, 1998, at which time Plaintiff informed Mr. McClanahan that he thought this was a good price and he wanted to be hooked up to the MLGW water line. In his deposition, Plaintiff stated that he believed Mr. McClanahan refused to hook him up to MLGW because of his race.

In his deposition, Plaintiff also testified that he spoke with Mr. Goforth in October of 1998. According to Plaintiff, Mr. Goforth told him that he would not be getting either water or sewer from Bartlett. Plaintiff states he viewed this as race discrimination.

On December 8, 1998, Mr. Goforth confirmed at a public meeting of the Board of Mayor and Aldermen that Plaintiff could install a septic tank on his property. At the meeting, Plaintiff stated that he did not want to install a septic tank because he preferred a Bartlett sewer connection.

In January of 1999, Bartlett adopted the Sewer Extension Plan to provide sewer service to the twenty-one areas in Bartlett that did not have them. According to Mr. McClanahan, these areas include residents of all races. The area where Plaintiff's property is located is scheduled for sewer installation in 2005.

Plaintiff met with Jay Rainey, Bartlett's Chief Administrative Officer, and Kenneth Fulmar, Bartlett's Mayor, in February of 1999, and advised them that he had received conflicting information in the past as to whether he could build on his property with a septic tank. In March of 1999,

Mr. Rainey sent Plaintiff a letter confirming that he could install a septic tank on his property if he wanted to build on the property before Bartlett made sewer service available. Mr. Rainey also confirmed that Mr. McClanahan had originally given Plaintiff incorrect information regarding the two acre requirement because Mr. McClanahan did not have access to Plaintiff's plat and the exception allowing a septic tank at the initial meeting.

In response to a request from Plaintiff, Mr. McClanahan sent Plaintiff a letter in April of 1999 telling him to speak with Kevin Poe at MLGW about connecting to MLGW's water line. Mr. McClanahan informed Plaintiff that he could apply for a building permit upon installing a septic tank. When Plaintiff spoke with Mr. Poe in May of 1999, Plaintiff was told that he could not hook up to MLGW's water line until Mr. Poe received permission from Bartlett. Plaintiff claims that he spoke with Mr. McClanahan in May of 1999, at which time Mr. McClanahan said he would take care of it. Plaintiff asserts he then spoke with Mr. Poe in May and June of 1999 and was told that Mr. Poe had not received approval from Mr. McClanahan.

Mr. McClanahan responded to another letter from Plaintiff in January of 2000. Plaintiff requested information about extending sewer service from the nearby Daybreak Subdivision to his property. Mr. McClanahan informed Plaintiff that the topography of the land prohibited extension of the gravity sewer system from the subdivision to Plaintiff's property.

Mr. Rainey also responded to questions from Plaintiff in January of 2000. Mr. Rainey informed Plaintiff that Code Enforcement reviews the lot, site plans, and a drawing of where the building is to be located on a lot in response to a request for a building permit. Mr. Rainey again informed Plaintiff that he could install a

septic tank, but would be required to connect to MLGW's water supply to do so.

In addition to requesting information regarding sewer service and building permit requirements, Plaintiff claims that he called Mr. McClanahan almost weekly from June of 1999 until August of 2000 to check on the approval to MLGW. Plaintiff met with Mr. Poe at MLGW in August of 2000, after which Mr. Poe sent Mr. McClanahan a letter on August 25 requesting approval to provide water service to Plaintiff's property. Mr. McClanahan received the letter and authorized the water connection on September 6, 2000. Mr. McClanahan stated in his affidavit that he never received another request to authorize service for Plaintiff other than the one he signed and returned to MLGW.

Plaintiff has stated that, notwithstanding the fact that MLGW has already provided a water line in Plaintiff's area, Plaintiff still wants Bartlett to run a city water line to his property because he pays Bartlett city taxes. Bartlett maintains that it has never run a water line to an area that already has access to a water line.

Plaintiff's neighbors are Caucasian individuals and both have septic tanks. According to Mr. McClanahan and Mr. Fulmar, the Daybreak Subdivision, which is built around the Quail Ridge Golf Course, is the only property in the area which has a sewer system. The developer installed the sewer system in this subdivision. The subdivision is composed of families of all races. According to Mr. Fulmar, it is not feasible to run a gravity sewer line from the golf course located near Plaintiff's property given the topography of the land. Bartlett claims that it will have to bring the sewer system to Plaintiff's property from another location approximately 2400 feet away. As part of the Sewer Extension Schedule, this should occur by the year 2005.

In support of his claims of discrimination based on race, Plaintiff claims that Miss Carolyn Swindell[4], a Caucasian individual, received a building permit to build a house with a septic tank on a plot of land that is less than two acres. Ms. Swindell does not actually live in Bartlett; she lives in Shelby County and received her building permit from Shelby County. However, she received water service from Bartlett that enabled her to build a home with a septic tank. Plaintiff's Complaint indicates he became aware in January of 1997 that Ms. Swindell received her water connection from Bartlett. Plaintiff also claims that he has been denied access to the Bartlett sewer system based on race.

The Tennessee Department of Transportation previously investigated Plaintiff's claim of discrimination in violation of Title VI. The investigator determined that he could not substantiate Plaintiff's complaint. The Department of Housing and Urban Development ("HUD") previously investigated Plaintiff's claim of discrimination in violation of Title VIII of the Civil Rights Act of 1968 and the Fair Housing Act of 1988. HUD determined that there was no reasonable cause to believe a discriminatory housing practice had occurred.

Pursuant to the advice of counsel, Plaintiff has not attempted to obtain access to MLGW's water line or to obtain permission to construct a house on his property pending the outcome of this litigation.

Plaintiffs have sued Defendants alleging violations of 42 U.S.C. §§ 1982, 1983, and 3601, the common law of Tennessee, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4–21–101, in connection with

4. Defendants challenge the allegations contained in Plaintiff's Affidavit that pertain to Ms. Swindell on the grounds that Plaintiff has not attested that he has personal knowledge of any of the facts contained in his Affidavit.

Bartlett's failure to issue a building permit or provide sewer or water service to Plaintiffs' property.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1989).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Defendants assert that Plaintiffs' claims are barred by the applicable statutes of limitations. Defendants also assert that Plaintiffs' claims fail as a matter of law because water service has been available to Plaintiffs' lot since 1997 and Plaintiffs have been able to build a house on their lot

using a septic tank as their Caucasian neighbors have been required to do.

### A. Statute of Limitations

Defendants challenge Plaintiffs' claims under the federal civil rights statutes, the Fair Housing Act, and the Tennessee Human Rights Act as barred by the applicable statutes of limitations.

### 1. 42 U.S.C. §§ 1982, 1983

 In all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries applies. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Tennessee statute of limitations for civil rights violations under § 1982 or § 1983 is one year. Tenn.Code Ann. § 28–3–104(a)(3); *Berndt v. Tennessee,* 796 F.2d 879, 883 (6th Cir.1986). A federal civil rights claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the plaintiff's action. *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984). In addition to applying the state statute of limitations in a § 1983 action, a federal court is also obligated to apply the state rule for tolling the statute of limitations if it is consistent with the purposes of § 1983. *Board of Regents of the Univ. of the State of New York v. Tomiano,* 446 U.S. 478, 486, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

 Plaintiff filed this action on September 6, 2001. Accordingly, any claims that accrued before September 6, 2000 are barred by the statute of limitations.

According to Mr. Middlebrook's deposition, Mr. Goforth informed him in October of 1998 that Bartlett would not provide city water or sewer services to Plaintiffs. Therefore, Plaintiffs' civil rights claims regarding Bartlett's failure to provide city

sewer and water services are plainly barred by the statute limitations.[5] Plaintiffs' allegation regarding the incorrect advice Mr. McClanahan provided in 1995 about the acreage requirement for septic tanks is likewise barred by the statute of limitations.

Plaintiffs' claim that Bartlett failed to authorize MLGW to provide water service in violation of their civil rights requires additional analysis. Mr. McClanahan signed an August 25, 2000 letter provided by MLGW, authorizing MLGW's provision of water to Plaintiff's property, during the day on September 6, 2000. This was approximately 15 months after Plaintiff's asserted initial oral requests to Mr. McClanahan. This document removed Bartlett's last obstacle to Plaintiff's submission of a completed building permit. Since "the law will not recognize ... fractions of a day", 86 C.J.S. Time § 11 (1997), the Court will not recognize the portion of the day on September 6 during which Mr. McClanahan had not signed the authorization form. Accordingly, the last day on which an allegedly discriminatory act occurred is September 5, 2000. As Plaintiffs' Complaint was not filed until September 6, 2001, Plaintiffs' civil rights claims regarding the failure to approve water service from MLGW are barred by the statute of limitations.[6] The Court DISMISSES Plaintiffs' civil rights claims under 42 U.S.C. §§ 1982 and 1983.

## 2. 42 U.S.C. § 3601

Plaintiff's Fair Housing Act claims under 42 U.S.C. § 3601, *et seq.*, are governed by the statute of limitations provided in 42 U.S.C. § 3613. Section 3613(a)(1)(A) provides a plaintiff with two years after the alleged discriminatory housing practice occurs in which to file suit. This limitations period is tolled during the time an administrative proceeding based on the discriminatory housing practice is pending. 42 U.S.C. § 3613(a)(1)(B).

Plaintiffs filed their Complaint on September 6, 2001. Plaintiffs filed an Amended Complaint on October 5, 2001, which for the first time included reference to the Fair Housing Act. These claims relate back to the original filing date of the Complaint because they arose from the same conduct, transaction or occurrence. Fed.R.Civ.P. 15(c). Therefore, any claims that accrued before September 6, 1999 are barred by the statute of limitations. Additionally, Plaintiff's filed a complaint with HUD regarding Bartlett's failure to provide sewer service on March 8, 2000. HUD dismissed Plaintiffs' complaint on January 29, 2001. With respect to the sewer service claim, the statute of limitations was tolled during the HUD proceedings. Therefore, any claim regarding Bartlett's failure to provide sewer service that accrued before November 15, 1998 is barred by the statute of limitations.

As discussed above, any claim that Bartlett failed to provide city water or sewer

---

**5.** Neither of these claims supports the finding of a continuing violation under the three-pronged test recently reiterated in *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 941–941 (6th Cir.1999) ("Passive inaction ... does not support a continuing violation theory."). *See also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 n. 3 (6th Cir.1995) ("Courts have been extremely reluctant to apply [the continuing violations] doctrine outside of the context of Title VII.").

**6.** Even assuming Plaintiffs' theory of a continuing violation were correct, the civil rights claims are barred by the statute of limitations because the alleged continuing violation ended on September 5, 2000. At least one of the allegedly discriminatory acts must occur within the limitations period. *Caldwell v. Rowland*, 932 F.Supp. 1018, 1021 (E.D.Tenn.1996).

service accrued at the latest in October of 1998. Accordingly, these claims are barred by the statute of limitations. Similarly, allegations regarding the incorrect advice Mr. McClanahan provided in 1995 about the acreage requirement for septic tanks are barred by the statute of limitations.

■ However, viewing all of the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs' Fair Housing Act claims regarding the authorization for water service from MLGW and the effective denial of a building permit[7] due to Defendants' failure to authorize water service are not barred by the statute of limitations. The Court accepts Plaintiff's uncontradicted statement in paragraphs 41–42 of his Affidavit that he made weekly phone calls to Mr. McClanahan from June of 1999 through August of 2000 in an attempt to ascertain when Mr. McClanahan would provide MLGW with the approval necessary to allow Plaintiff to connect to MLGW's water line. It was not until Mr. Poe at MLGW sent a letter to Mr. McClanahan requesting his signature that Mr. McClanahan gave the required approval on September 6, 2000. These actions occurred within the two year limitations period and are not barred by the statute of limitations.

### 3. Tennessee Human Rights Act

■ The statute of limitations for a claim brought under the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101, is one year. Tenn.Code Ann. § 29–20–305(b). Plaintiffs' claims under the Tennessee Human Rights Act are barred by the statute of limitations for the same reasons as Plaintiffs' civil rights claims, discussed above. Accordingly, the Court DISMISSES these claims.

### B. Fair Housing Act

As the Court has determined that some of Plaintiffs' claims under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, are not barred by the statute of limitations, the Court must discuss the substance of those claims. Plaintiffs state that they are proceeding with claims under §§ 3604(a), (b), (c) and 3617. Section 3604 states that it shall be unlawful:

(a) To ... make unavailable or deny, a dwelling to any person because of race . . . .

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, *or in the provision of services or facilities in connection therewith,* because of race . . . .

(c) To make, print, or publish ... any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race . . . .

(Emphasis added.)

Section 3617 provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed,

---

**7.** The Court finds that Plaintiffs' failure to submit a completed application for a building permit prior to September 6, 2000 is not germane to the statute of limitations question. First, Plaintiff claims Defendants never told him all of the prerequisites to receiving a building permit, making it impossible for him to have completed his application. Second, Plaintiffs were told a permit would not be granted without the inclusion of plans for a septic tank. A septic tank could not be installed until Plaintiffs obtained access to MLGW's water line. This access could only be approved by Defendants. It is clear that Defendants did not approve Plaintiffs' request for water service from MLGW until September 6, 2000, thus making it impossible for Plaintiffs to have submitted a proper application prior to that date. Therefore, the failure to approve water service effectively denied Plaintiffs a building permit.

or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Defendants correctly note that when analyzing a claim of discrimination under the Fair Housing Act the Court must apply the three-part burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Selden Apartments v. United States Dep't of Hous. and Urban Dev.*, 785 F.2d 152, 159 (1986). In order to establish a *prima facie* case of housing discrimination in this case, Plaintiffs must show: (1) that they are members of a protected class; (2) they applied for and were qualified for water service from MLGW and a building permit; (3) water service from MLGW and the application for a building permit were denied; and (4) Defendant provided similarly situated individuals outside the protected class with water service enabling them to receive a building permit. *Id.*

■ The parties do not dispute that Plaintiffs satisfy the first element. As to the second element, Mr. Middlebrook states he contacted Mr. McClanahan weekly from June of 1999 until August of 2000 to check on Bartlett's approval of his water connection with MLGW. Plaintiffs needed access to a water line in order to install a sewer, which is a prerequisite to receiving the building permit that Defendants long knew Plaintiffs sought. The Court finds that this satisfies the requirement that Plaintiffs applied for and were qualified for water access and a building permit. Under the third element, Mr. McClanahan's unexplained failure to act on Plaintiff's requests for 15 months constitutes a denial

of access to water and, by extension, a building permit. The Court recognizes that Bartlett, as of September 6, 2000, authorized MLGW to provide water to Plaintiffs' property. Therefore, the impediment to submission of a proper building permit application has been removed.[8] Despite this fact, the 15 month period during which Defendants failed to act on Plaintiffs' request for water access satisfies the third element of the *prima facie* case.

In order to satisfy the fourth element, Plaintiffs have attempted to compare themselves to Carolyn Swindell, a Caucasian individual who received a water connection from Bartlett that enabled her to receive a building permit from Shelby County. Ms. Swindell is not a sufficiently comparable individual because she lives outside of Bartlett. Shelby County, not Bartlett, issued her building permit. However, as noted in Mr. Fulmar's Affidavit, a number of Caucasian individuals live near Plaintiffs' property, either on neighboring lots or in the nearby Willoughby Woods subdivision. These Caucasian individuals receive water service from Bartlett and have been able to install septic tanks and build homes on their property. These individuals provide an appropriate comparison to Plaintiffs. Plaintiff has, therefore, established a *prima facie* case of discrimination.

The second part of the *McDonnell Douglas* analysis requires Defendants to offer a legitimate non-discriminatory reason for failing to approve Plaintiffs for water access from MLGW. Defendants have not offered a justification for the failure to approve Plaintiffs' request to connect to MLGW's water line for 15 months, until September 6, 2001, and the

---

8. In this regard, the Court notes that the injunctive relief requested in Plaintiffs' Amended Complaint is not available. Plaintiffs have access to water. Additionally, they have been capable of submitting a completed building permit application since September 6, 2000.

effective denial of a building permit until that date. Accordingly, the Court denies the motion for summary judgment as to these particular claims under the Fair Housing Act.

### C. Official Capacity Claims

For the reasons cited in part IV.D. of Defendants' motion, Plaintiffs' claims against Mr. Goforth, Mr. McClanahan, Mr. Fulmar, and Mr. Rainey in their official capacities are DISMISSED because Bartlett is already a party to this action.

### D. Qualified Immunity

Mr. Goforth, Mr. McClanahan, Mr. Rainey, and Mr. Fulmar argue that they are entitled to the defense of qualified immunity with respect to the claims asserted against them individually.

The Court notes preliminarily that none of Plaintiffs' papers contains any allegations against Mr. Fulmar or Mr. Rainey individually. Therefore, the Court DISMISSES the claims against Mr. Fulmar and Mr. Rainey in their individual capacities. Furthermore, Plaintiffs make no allegations against Mr. Goforth that fall within the applicable limitations period. Therefore, the Court DISMISSES the claims against Mr. Goforth in his individual capacity.

Given that the Court has already dismissed Plaintiffs' claims under §§ 1982 and 1983, the Court will only discuss the defense of qualified immunity with respect to the Fair Housing Act. The Court has not located a Sixth Circuit case discussing whether the defense of qualified immunity is available to an official who has been sued individually for a violation of the Fair Housing Act. However, at least three other courts have determined that the qualified immunity defense is available in such cases. *Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1299–1300 (11th Cir. 1998) (discussing qualified immunity in action under § 3617); *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1238–39 (D.C.Cir.1997) (allowing officials to plead defense of qualified immunity to a claim under § 3617); *Baggett v. Baird*, 1997 WL 151544, 1997 U.S. Dist. Lexis 5825 (N.D.Ga. Feb. 18, 1997) (discussing qualified immunity in action under § 3617). The Court adopts this view.

■ "Government officials performing discretionary functions are afforded qualified immunity, shielding them from civil damages, as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir.1988). *See also Vaughn v. United States Small Bus. Admin.*, 65 F.3d 1322, 1326 (6th Cir.1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Therefore, in order to defeat Defendants' claims of qualified immunity, Plaintiffs must show: (1) that a clearly established right has been violated; and (2) the official would have known that their conduct violates that right.

■ The Court is required to accept Plaintiffs' version of events when reviewing the motion for summary judgment. Plaintiffs assert that Mr. Middlebrook repeatedly contacted Mr. McClanahan over a period of 15 months in an attempt to obtain permission to receive water service from MLGW. Plaintiffs needed water service so they could include plans for a septic tank on their property in their application for a building permit. Plaintiffs asserts that Mr. McClanahan failed to take any action prior to September 6, 2000 because of Plaintiffs' race.

Given the clear language of § 3604(b) and § 3617 of the Fair Housing Act, a reasonable official would know that the denial of water service and, by extension, a building permit based on the race of the applicant violates a clearly established

961

right. No explanation has been offered for the failure to provide approval for Plaintiffs' water service with MLGW in response to Mr. Middlebrook's repeated requests. Accordingly, if Plaintiffs can prove that Mr. McClanahan failed to act on the requests in the manner described above, based on Plaintiffs' race, they will have shown that he violated a clearly established right. The Court, therefore, must DENY summary judgment as to Mr. McClanahan's claim of qualified immunity.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion. The Court dismisses Plaintiffs' claims against Bartlett, with the exception of claims under the Fair Housing Act arising from Bartlett's failure to approve Plaintiffs for access to MLGW's water line and the effective denial of a building permit due to lack of access to water. The Court dismisses the claims against the individual Defendants, with the exception of the same claim under the Fair Housing Act against Mr. McClanahan, in his individual capacity.