RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DOROTHY MAE JOHNSON; LOIS TOWNES,

          _Plaintiffs-Appellants,_

    _v._

MEMPHIS LIGHT GAS & WATER DIVISION,

          _Defendant-Appellee._

No. 14-5484

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cv-02664—S. Thomas Anderson, District Judge.

Decided and Filed:  February 6, 2015

Before:  MERRITT, STRANCH, and DONALD, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**   Mark Ledbetter, HALLIBURTON & LEDBETTER, Memphis, Tennessee, Kathleen L. Caldwell, KATHLEEN CALDWELL, PLLC, Memphis, Tennessee, for Appellants. David L. Bearman, Julia Kavanagh, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Memphis, Tennessee, for Appellee.

_____

### OPINION

_____

JANE B. STRANCH, Circuit Judge.  J. Dean Johnson was denied utility services by Memphis Light, Gas & Water (MLGW), a division of the City of Memphis, in February 2010 because he did not possess a state-issued photo identification card.  Mr. Johnson, who lacked a birth certificate, was illiterate and had intellectual disabilities that made it difficult for him to navigate the process of obtaining the necessary state identification.  He lived without utilities for

over eighteen months and died of heat stroke in August 2011.  Plaintiffs—his wife and sister—sued MLGW bringing claims under 42 U.S.C. § 1983; the Governmental Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-205 *et seq.*; and Tennessee's wrongful death statute, Tenn. Code Ann. § 20-5-106 *et seq.*  The court granted summary judgment for MLGW on the grounds that all of Plaintiffs' claims were barred by the applicable statutes of limitations.  We REVERSE and REMAND for proceedings consistent with this opinion.

## BACKGROUND

J. Dean Johnson, a long-term employee of Memphis's Public Works Division, worked in sanitation, lifting and emptying garbage cans.  MLGW denied him public utility services for his new apartment in February 2010 because he could not produce state-issued photo identification.  On August 4, 2011, Johnson died of heat stroke in his apartment, where the internal temperature was 93.2 degrees Fahrenheit.  He was sixty-five years old at the time of his death and had no electricity, heat, or air conditioning in his home.  Plaintiffs allege that his death was caused by MLGW's denial of services.  *Id.*

Johnson, an African American, was born in rural Mississippi and delivered by a midwife.  He had no birth certificate and had difficulty acquiring one from the state, in part due to his intellectual disabilities.  In sworn affidavits, Johnson's niece, Lorena Jackson, and a longtime co-worker, Melvin Hunt, testified that although Johnson was able-bodied, he was substantially intellectually impaired.  Ms. Jackson described Johnson as having "severe learning disabilities," such that he was unable to read and write, could not do basic math, had "severe memory problems" and difficulty planning, and was unable to care for himself without help.  He had problems communicating with others and often became angry or frustrated as a result.  Johnson could apparently write his name but would misspell it and was unsure of his birthdate, he did not drive or keep a bank account, and he was dependent on co-workers to bring him to and from work.  In order to pay bills and feed himself, Johnson used cash, but he was often cheated and did not know the meaning of any documents he signed.  He is not known to have attended school beyond second grade.  Mr. Hunt, who worked with Johnson for over forty years, confirmed that Johnson had to be driven to and from work, needed help filling out forms or legal documents, and that he was "unable to give a complete answer or to carry [on] a conversation, or to

understand simple mathematical problems." Although Johnson lived by himself, he was evidently highly reliant on nearby family, friends, neighbors and co-workers for regular assistance with the routines of everyday life.[1]

When Johnson moved to 2931 Park Avenue, #8, in Memphis, Tennessee, two nieces—Ms. Lois Taylor and Ms. Jackson—accompanied him on two different occasions in February 2010 to MLGW offices to help him obtain services for his new apartment. Johnson apparently had had utility services in past residences, and Ms. Jackson had accompanied him to MLGW offices on several previous occasions and dealt with bill irregularities and service problems on his behalf. Both nieces characterized Johnson as easily confused and frustrated by such encounters. When she accompanied him to MLGW on February 5, 2010, Ms. Taylor had to explain to Johnson that he could not go straight to the billing department but had to inform another employee there that he wanted utilities turned on. Ms. Taylor then waited with him until his name was called. She went back to an office with him and participated in the conversation, during which the MLGW employee told Johnson that he didn't have the proper identification—he "had to either have a State I.D. or a driver's license." Ms. Taylor described Johnson's attempts to communicate his situation: "He didn't drive, and he was explaining that he couldn't get a State I.D., and he was asking what was wrong with [his work] I.D., it had a picture on it." Ms. Taylor showed the MLGW employee Johnson's work identification card while Johnson showed his social security card. Ms. Taylor then asked if the MLGW employee could call Johnson's job to verify his identity, but she refused. The MLGW employee then gave Ms. Taylor a copy of a slip on which she had written "invalid I.D." As they left Johnson appeared to be upset or "heated." Ms. Taylor testified in her deposition that to her knowledge Johnson only contacted MLGW while with her or her sister, as "[h]e wouldn't have called because he didn't know how to call, . . . he wouldn't know what to say." After their encounter with MLGW, Ms.

---

[1]A fuller portrait of Johnson's disabilities and the extent to which he was assisted in all areas of life by a network of family, friends, neighbors, and co-workers emerges from Ms. Jackson's complete deposition. However, Plaintiffs' attorneys did not include the entire deposition in the district court record, as the Court rule was to attach only "excerpts of referenced documents that are directly pertinent to the matter under consideration by the court." U.S. Dist. Ct. W.D. Tenn. Local Rules—Civil, App'x A, Electronic Case Filing Policies & Proc. Manual, R. 7.2 available at http://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf. Plaintiffs' attorneys belatedly attempted to attach it as well as the complete depositions of Dorothy Mae Johnson, Lois Townes, several MLGW employees, and an expert witness, Miguel Laboy, almost six weeks after filing Plaintiffs' Notice of Appeal. As these documents are not part of the record, and no motion was made to include them on appeal, we do not consider them.

Taylor told Johnson that she would need to take him to Jackson, Mississippi, to see about getting a birth certificate, and he agreed, but she never did so.

After MLGW denied Johnson utility services, he spoke with his sister, Lois Townes, who told him that to get a state identification card he had to go to Brownsville, Tennessee, where he had started school, and get his school record. Ms. Jackson testified that "Uncle David" had apparently written away for some information on Johnson's behalf and then taken Johnson to Brownsville. Johnson was "excited" because he had obtained some papers there and he thought that these would be sufficient for him to obtain utilities. On February 26, 2010, Ms. Jackson accompanied Johnson to an MLGW office for a second time, although she stayed in the waiting area while he went back to speak with an MLGW employee. She testified that she "let him go back there because he knew . . . what to say and everything." A short while later she heard a "commotion" as a woman accompanied Johnson out of the office, apparently trying to get him out quickly "because he was really upset." She explained to Ms. Jackson that Johnson did not have the proper state-issued identification. As she did so, Johnson was still trying to show her his papers and explain that he worked for the City of Memphis. "[A]t that point he didn't know what to do," Ms. Jackson testified. According to Ms. Jackson's affidavit, Johnson "did not understand how to solve the problem with his identification or his birth certificate nor did he understand whether or not he had any rights with respect to [MLGW] and its denial of utilities."

In 2010 only, MLGW had a policy that required applicants to produce a state-issued photo identification card in order to have utilities connected. However, in the years prior to and following 2010, the forms of identification that Johnson presented—a photo identification issued by his employer, Memphis's Public Works Division, and a social security card—would have been sufficient to obtain utilities. The 2010 policy also stated that "[e]xceptions will be considered for customers 60 years of age and older," but the MLGW employees Johnson encountered did not attempt to see if he qualified for an exception. MLGW did not train employees regarding how to advise customers who did not possess the necessary photo identification, nor did it train employees on how to deal with customers who were illiterate. MLGW made no efforts to contact potential customers who were denied utilities as a result of the policy in effect in 2010.

After Johnson's death, Plaintiffs sued MLGW in the Circuit Court of Shelby County, Tennessee, claiming violations pursuant to 42 U.S.C. § 1983, the GTLA, and Tennessee's wrongful death statute. MLGW removed the case to federal district court and moved for summary judgment. The district court granted summary judgment to MLGW, holding that 1) the pertinent state statute of limitations barred all of Plaintiffs' claims; 2) the statute of limitations could not be tolled because Plaintiffs did not submit sufficient evidence that Johnson was of unsound mind; and 3) no alternative statutes of limitation applied. The court found that the affidavits by Jackson and Hunt alleging Johnson to be of unsound mind contradicted statements made in Plaintiffs' complaint and earlier depositions, and noted that Plaintiffs had not claimed Johnson to be of unsound mind prior to their response to MLGW's motion for summary judgment. Plaintiffs timely appealed, arguing that the district court erred 1) in determining that the statute of limitations barred their claims, and 2) in finding that Plaintiffs failed to present a genuine issue of material fact regarding whether Johnson was of unsound mind.

## ANALYSIS

We review de novo a district court's order granting summary judgment. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Laster*, 746 F.3d at 726 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). In reviewing such a grant, we view all evidence and draw all inferences in the light most favorable to the nonmoving party. *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### a.  Statute of Limitations

The district court held that Plantiffs' § 1983 and state law claims were time-barred, absent any tolling of the statute of limitations. We agree.

As § 1983 does not have its own statute of limitations, the court must look to state law to determine the limitations period. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *see also Wilson v. Garcia*, 471 U.S. 261, 275 (1985). Under Tennessee law, "civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" must commence "within one (1) year after the cause of action accrued." Tenn. Code Ann. § 28-3-104(a)(3).

Plaintiffs do not dispute that the statute of limitations for § 1983 actions is one year; they do dispute when the claim accrued. Federal law determines when a § 1983 claim accrues, *Wallace v. Kato*, 549 U.S. 384, 388 (2007), and it has been well established that a § 1983 federal civil rights claim accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Roberson*, 399 F.3d at 794 (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). "'A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Id.* (quoting *Sevier*, 742 F.2d at 273). In this objective inquiry, courts look "'to what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)). At that point, the plaintiff has a "complete and present cause of action," such that he can "file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal quotation marks omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

In this case, MLGW's denial of utility services constituted an injury to Johnson, and a "typical lay person" should have been alerted by that denial "to protect his or her rights." *Id.* Although Johnson's death later converted his cause of action into a wrongful death claim, at the time MLGW denied him utility services in February 2010, he had grounds for a suit alleging violations of his rights under the Fourteenth Amendment. *See Middlebrook v. City of Bartlett*, 341 F. Supp. 2d 950, 956-57 (W.D. Tenn. 2003) (holding that plaintiffs' § 1983 discrimination claim accrued when a city official informed them that the city would not provide water or sewer services). Plaintiffs did not bring suit, however, until two years later, in June 2012, and so their § 1983 claim is time-barred.

Plaintiffs also dispute the accrual date of their state law claims, yet the statute-of-limitations analysis under Tennessee's GTLA and wrongful death statute is similar to that for the § 1983 claim.   Tennessee's GTLA requires that suits against a governmental entity "be commenced within twelve (12) months after the cause of action arises."  Tenn. Code Ann. § 29-20-305(b); *Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 44 (Tenn. 2013).  A claim under the GTLA accrues or "arises," in accordance with Tennessee's "discovery rule," "when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct."  *Sutton v. Barnes*, 78 S.W.3d 908, 916 (Tenn. Ct. App. 2002).

Tennessee's wrongful death statute does not contain a statute of limitations, but Tennessee has long held that wrongful death actions are governed by the statute of limitations for personal injuries, which provides that an action must commence within a year after accrual. Tenn. Code Ann. § 28-3-104(a)(1); *Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Investors, LP*, 221 S.W.3d 506, 508 (Tenn. 2007).  Unlike "pure" wrongful death statutes, Tennessee's wrongful death statute is a "survival" statute—it preserves only the decedent's cause of action and does not create a new cause of action for beneficiaries.  *Lynn v. City of Jackson*, 63 S.W.3d 332, 335 (Tenn. 2001); *Jones v. Black*, 539 S.W.2d 123, 123 (Tenn. 1976).  Therefore, while the statute of limitations in a "pure" wrongful death statute begins to run at the time of death, precisely because Tennessee's "survival" statute is oriented around the rights of the decedent and not the beneficiaries, the cause of action for wrongful death accrues at the time of the injury rather than the death itself.   *Jones*, 539 S.W.2d at 128 (Brock J., dissenting).  That is, Tennessee's wrongful death statute not only adopts the statute of limitations for personal injury, *see* Tenn. Code Ann. § 28-3-104, but it also applies the same rules concerning accrual.

In tort actions, "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."  *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975).  "A cause of action for wrongful death accrues as of the date a cause of action accrues for the injury which resulted in the death," *Craig v. R.R. Street & Co.*,

*Inc.*, 794 S.W.2d 351, 355 (Tenn. Ct. App. 1990), meaning that the date of a decedent's death is the latest, but not the only, date from which the one-year limitation could run, *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, 665 S.W.2d 717, 718 (Tenn. 1984). Where a decedent was injured and died months later, her tort claims accrued on the date of her injury. *McCroskey*, 524 S.W.2d at 488, 491. As a general rule, an "injury" is "understood as any wrong or damage done to another's person, rights, reputation, or property." *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (citing *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977)). And like Plaintiffs' § 1983 claim, the state law claims are barred because Johnson had reason to know that his rights had been violated upon the denial of utility services in February 2010.

#### b.  Tolling the Statute of Limitations

Plaintiffs argue that even if the claims had accrued, there is sufficient dispute over the material fact of Johnson's intellectual or mental disability that a jury should determine whether the applicable statutes of limitations should be tolled. Viewing the facts and making all inferences in the light most favorable to Plaintiffs, we agree that they have presented facts sufficient to preclude summary judgment for Defendant MLGW. *Chapman*, 670 F.3d at 680.

Having borrowed the state's statute of limitations for the § 1983 claim, we apply the state's tolling statute, as long as the result is not inconsistent with federal law or policy. *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010); *see generally Hardin v. Straub*, 490 U.S. 536, 538-543 (1989) (discussing the application of state statutes of limitations to § 1983 claims). For current personal injury and wrongful death claims, Tennessee permits the statute of limitations to be tolled if the person entitled to bring the cause of action is "adjudicated incompetent." Tenn. Code Ann. § 28-1-106. Johnson never was. However, in the version of the tolling statute that was in effect through June 30, 2011—and so during the period when Johnson's claim accrued in February 2010—the statute of limitations could be tolled if "the person entitled to commence an action" was of "unsound mind." Tenn. Code Ann. § 28-1-106 (amended 2011).**[2]** "Statutes are presumed to operate prospectively unless

---

**[2]**The statute also provided that "such person, or such person's representatives and privies . . . may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action . . . ." Tenn. Code Ann. § 28-1-106 (amended 2011). The GTLA specifically incorporates this tolling provision. Tenn. Code Ann. § 28-1-106; *Lynn*, at 334. When a person of unsound mind dies, the disability is

the legislature clearly indicates otherwise," or unless the statute is remedial or procedural in nature. *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998). We therefore apply the version of Tenn. Code Ann. § 28-1-106 in effect as of February 2010.

Under Tennessee law, a person was of "unsound mind" under the former version of the Act when that individual "was unable to manage his or her day-to-day affairs at the time the cause of action accrued." *Sherrill v. Souder*, 325 S.W.3d 584, 601 (Tenn. 2010). In *Sherrill*, the Tennessee Supreme Court cited with approval the following "general test" for tolling a statute of limitations: "whether a person could know or understand his or her legal rights sufficiently well to manage his or her personal affairs…." *Id.* (quoting 54 C.J.S. Limitations of Actions § 172 (2010)). "The focus of the inquiry," the court made clear, "should be on a plaintiff's mental capacity to understand his or her legal rights and responsibilities, including the cause of action that has accrued." *Id.* "[P]hysical infirmity . . . has little bearing" on such an inquiry. *Id.* at 600.

Plaintiffs have introduced evidence sufficient to raise a genuine dispute of material fact regarding Johnson's mental incapacity. Based on her lifelong relationship with her uncle, Ms. Jackson described him as able-bodied yet mentally disabled to the extent that he "did not understand . . . whether or not he had any rights with respect to" MLGW's denial of utilities. She observed that he had "severe learning difficulties" and thus was illiterate and unable to do basic math, was burdened by "severe memory problems" and so had difficulty planning his daily life, and was "unable to care for himself without help." Although he could carry out simple transactions with cash at local stores, he was often "cheated." He needed assistance filling out legal forms or documents, would misspell his name, was unsure of his own birthdate, had difficulty carrying on conversations, and may not have attended school beyond second grade. He did not have a birth certificate and did not know how to obtain the papers necessary to obtain the state identification required by MLGW. When he did not understand a problem, he became "angry." Mr. Hunt, who worked with Johnson for over forty years, similarly testified that, "although able-bodied," Johnson was illiterate, could not do simple math, could not "remember recent events" or plan future events, could not "give a complete answer" or carry on a conversation, and could not understand legal documents.

---

removed and the statute of limitations is no longer tolled. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 105 (Tenn. 2006).

MLGW argues that these affidavits were improper lay opinion. They were, however, based upon the personal and rational perceptions of Ms. Jackson and Mr. Hunt,[3] and "the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." Fed. R. Evid. 701; *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (internal citations and quotation marks omitted). Moreover, the Tennessee Supreme Court has explicitly held that evidence regarding an individual's "unsound mind" can be proved by "affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence," and can be supplied not only by mental health professionals but also by "family members … or any other person who has knowledge of facts that demonstrate" the disabling condition. *State v. Nix*, 40 S.W.3d 459, 464 (Tenn. 2001).

MLGW also points out that Plaintiffs did not raise the applicability of Tenn. Code Ann. Section 28-1-106 until they responded to the motion for summary judgment, even though MLGW raised the statute of limitations in its Answer to the Complaint. Yet, as MLGW concedes, the failure to plead that Johnson was of "unsound mind" in the Complaint does not "automatically preclude benefit of the tolling statute" or prevent Plaintiffs from raising the issue in their response to the motion for summary judgment. *Jacobs v. Baylor Sch.*, 957 F. Supp. 1002, 1009 n.5 (E.D. Tenn. 1996).

The decision below determined that Ms. Jackson and Mr. Hunt's affidavits were insufficient to create a dispute of material fact because they contradicted "previous sworn statement[s] . . . without explaining the contradiction or attempting to resolve the disparity." Providing no conflicting deposition testimony, it referenced Plaintiffs' (unverified) Complaint because it alleged that Johnson was "healthy, active, and industrious" and worked full time for Memphis's Public Works Division but lacked a specific allegation that he was of unsound mind. A complaint need only provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and Johnson could be both able-bodied and mentally disabled to the extent that he could not understand his legal rights. We find no impermissible contradiction on this record.

---

[3]MLGW also argues that Mr. Hunt's affidavit is inadmissible because Plaintiffs did not disclose his name in their interrogatories or initial disclosures. As Ms. Jackson's affidavit is sufficient to present a genuine issue of material fact, and Mr. Hunt's affidavit simply corroborates hers, the outcome of this case does not hinge on the admissibility of Mr. Hunt's affidavit, and we need not decide its status here.

The test of whether an individual was of "unsound mind" focuses on his capacity to understand his legal rights. *Sherrill*, 325 S.W.3d at 601. "'The general test that is applied in determining whether a mental condition is of the type that will toll a statute of limitations, is whether a person could know or understand his or her legal rights sufficiently well to manage his or her personal affairs . . . .'" *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 172 (2010)). The term is "intended to apply to the incapacity to carry out legal functions." *Id.* (quoting *Roe v. Gelineau*, 794 A.2d 476, 486-87 (R.I. 2002)). The fragments of the depositions in the record depict Johnson as an individual who was dependent on others not only for transportation but also to help him function in basic everyday transactions. Both Ms. Taylor and Ms. Jackson testified that they drove Johnson to an MLGW office and there tried to help him communicate with MLGW employees to obtain utilities. Ms. Taylor accompanied Johnson into his meeting with an MLGW employee, and Ms. Jackson checked Johnson's utility bills and dealt with MLGW on his behalf. Ms. Jackson testified in her deposition that even after being told explicitly by an MLGW employee that he needed a state-issued photo identification card, Johnson thought that the records he had obtained in Brownsville would be sufficient to obtain utility services. When an MGLW employee told him otherwise, he became "really upset" and continued to try to explain that he had papers and worked for the City, despite being told repeatedly that a state-issued photo identification was required. *Id.*

Rather than contradictory, the deposition excerpts and affidavits read together plausibly show Johnson to have been an individual with extremely limited intellectual abilities who lacked the capacity to "carry out legal functions." *Sherrill*, 325 S.W.3d at 601. He was able to function somewhat independently only with the regular assistance of family, friends, and co-workers. The record suggests that Johnson, poor and apparently disconnected from social services, was as dependent on such informal networks as a comparably disabled middle-class individual might be dependent on an assisted living facility or a court-appointed guardian. There is a genuine dispute as to the material facts in this case, and the true extent of Johnson's mental disability is an issue that must be submitted to the trier of fact. *Sherrill*, 325 S.W.3d at 599-600. ("Whether an individual was of unsound mind on the date the cause of action accrued, thus tolling the statute of limitations, is a question to be resolved by the trier of fact.")

**CONCLUSION**

Plaintiffs have presented sufficient evidence of Johnson's mental disability, and thus the applicability of a prior version of Tennessee's tolling statute, Tenn. Code Ann. § 28-1-106 (amended 2011), so as to create a genuine issue of material fact as to whether Johnson was of unsound mind when this action accrued. We REVERSE the grant of summary judgment to Defendant MLGW and REMAND the case for a jury trial.